IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 21-21128 |
| VIVA TEXAS CRUISES, INC, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |

CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY DEBTOR

ADELITA CAVADA LAW
5151 Flynn, Ste. 508
Corpus Christi, Texas 78411

ATTORNEY FOR VIVA TEXAS CRUISES

DEBTOR AND DEBTOR-IN POSSESSION

Dated: August 1, 2021

1

TABLE OF CONTENTS

ARTICLE 1    Introduction ........................................................................................................... 2

ARTICLE 2    Definitions ............................................................................................................ 2

ARTICLE 3    Classification of Claims ....................................................................................... 5

ARTICLE 4    Provision for Payment of Administrative Expenses Claim (Unclassed) ............... 5

ARTICLE 5    Provisions for Treatment of Secured Claim Held by Great Central Mortgage Acceptance Company Against Debtor (Class 1) ........................................................................ 5

ARTICLE 6    Provisions for Treatment of Secured Claim Held by Megan Collection Services, Inc., Against Debtor (Class 2) ..................................................................................................... 6

ARTICLE 7    Provisions for Treatment of Secured Claim Held by Nueces County Against the Debtor (Class 3) ........................................................................................................................... 6

ARTICLE 8    Provisions for Treatment of Secure Claim Held by Aransas County Against the Debtor (Class 4) ........................................................................................................................... 7

ARTICLE 9    General Unsecured Creditors ............................................................................... 8

ARTICLE 10  Cramdown of Plan ................................................................................................ 8

ARTICLE 11  Means for Execution of the Plan ......................................................................... 9

ARTICLE 12   Provisions for Treatment of Disputed Claims ........................................................9

ARTICLE 13   Acceptance or Rejection of the Plan: Effect of Rejection by One or More Classes of Claims   .................................................................................................................................9

ARTICLE 14   Identification of Claims Not Impaired or Impaired by the Plan ..............................9

ARTICLE 15   Executory Contracts and Unexpired Leases ........................................................10

ARTICLE 16   Provisions Covering Distributions..........................................................................10

ARTICLE 17   Procedures for Resolving Disputed Claim.............................................................10

ARTICLE 18   Committees .............................................................................................................10

ARTICLE 19   Provision for Execution and Supervision of the Plan ............................................11

ARTICLE 20   Provisions for Management ....................................................................................11

ARTICLE 21   Events of Default ....................................................................................................12

ARTICLE 22   Miscellaneous Provisions........................................................................................12

ARTICLE 23   Payment of United States Trustee Quarterly Fees and Submission of Statements of Disbursements ...........................................................................................................................13

ARTICLE 1.
INTRODUCTION

THIS PLAN OF REORGANIZATION (the "Plan") is proposed by Viva Texas Cruises, Inc. (hereinafter referred to as "Debtor" unless otherwise specified), pursuant to Section 1121(a), title 11, United States Code, for the resolution of Debtor's outstanding creditor claims.

ARTICLE 2.
DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below:

2.1. Administration Claimant: Any person entitled to payment of an Administration Expense.

2.2. Administration Expense: Any cost or expense of administration of the chapter 11 case entitled to priority under Section 507(a)(1) and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, and actual and necessary expenses incurred post-petition by the Debtor-in-Possession, any indebtedness or obligations incurred by or assessed against the Debtor-in-Possession, or for the acquisition or lease of property or for providing of services to the Debtor-in- Possession, and allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

2.3. Allowed Claim: Any claim against the Debtor, proof of which was filed on or before the last date designated by the Bankruptcy Court as the last date for filing proofs of claims, if no proof of claim is filed which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed or such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" shall not, for the purposes of computation or Distributions under the Plan, include post-petition interest on the amount of such Claim.

2.4. Allowed Priority Tax Claim: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.5. Allowed Secured Claim: A Secured Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.6. Allowed Unsecured Claim: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, creditsor refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

2.7. Viva Texas Cruises, Inc.: A Texas corporation and the Debtor in this chapter 11 case.

2.8. Bankruptcy Code: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

2.9. Bankruptcy Court: The unit of the United States District Court for the Southern District of Texas, Corpus Christi Division, having jurisdiction over the chapter 11 case, or in the event such court ceases to exercise jurisdiction over the chapter 11 case, such court or adjunct thereof that exercises jurisdiction over this chapter 11 case in lieu of the United States Bankruptcy Court for the Southern District of Texas.

2.10. Bankruptcy Rules: The Rules of Bankruptcy Procedure as amended, as applicable to the chapter 11 case.

2.11. Cash: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

2.12. Chapter 11 Case: This cases under chapter 11 of the United States Bankruptcy Code in which Viva Texas Cruises, Inc., is the Debtor-in-Possession.

2.13. Claim: Any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.14. Committee: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

2.15. Confirmation Date: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

2.16. Confirmation Order: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.17. Creditor: Any person that has a Claim against the Debtor that arose on or before the Petition Date.

2.18. Debtor-in-Possession: Viva Texas Cruises, Inc., as Debtor-in-Possession.

2.19. Debtor: Viva Texas Cruises, Inc., the Debtor under this chapter 11 case.

2.20. Distributions: The property required by the Plan to be distributed to the holders of Allowed Claims.

2.21. Effective Date: The first day of the month following fourteen days after the Confirmation Date.

2.22. Final Order: An order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

2.23. Petition Date: On May 3, 2021, Debtor filed his petition for relief under chapter 11 of the Unites States Bankruptcy Code.

2.24. Plan: This Plan of Reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

2.25. Priority Non-Tax Claim: Any claim other than Administrative Expense or a Priority Tax Claim to the extent entitled to priority and payment under Section 507(a) of the Bankruptcy Code.

2.26. Priority Tax Claim: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

2.27. Schedules: Schedules and Statement of Affairs, as amended, filed by the respective Debtor with the Bankruptcy Court listing liabilities and assets.

2.28. Unsecured Creditor: Any Creditor that holds a Claim which is not a Secured Claim.

ARTICLE 3.
CLASSIFICATION OF CLAIMS

Claims are classified as follows:

3.1. Class 1 – Secured Claim Held by Great Central Mortgage Acceptance Company

3.2. Class 2 – Secured Claim Held by Megan Collection Services, Inc.

3.3. Class 3 – Secured Claim Held by Nueces County

3.4. Class 4 – Secured Claim Held by Aransas County

3.5. Class 5 – General Unsecured Creditors

## ARTICLE 4.
## PROVISIONS FOR PAYMENT OF
## ADMINISTRATION EXPENSES CLAIM (UNCLASSED)

4.1. 100% Payment. On the Effective Date, each Allowed Administration Expense Claim shall be paid in full in Cash or upon such other terms as may be agreed upon by and between any Administration Claimant and the Debtor.

4.2. Bar Date for Fee Claim. The Confirmation Order shall provide a bar date for filing of claims by those entities asserting claims for compensation under Sections 330 and/or 503 of the Bankruptcy Code.

## ARTICLE 5.
## PROVISIONS FOR TREATMENT OF THE SECURED CLAIMS HELD BY
## GREAT CENTRAL MORTGAGE ACCEPTANCE COMPANY (CLASS 1)

5.1. Class 1 is comprised of the secured claims of Great Central Mortgage Acceptance Company which is secured the real property located at 2150 State Highway 361, Aransas Pass, Texas 78336. Debtor proposes to pay this claim in full as follows:

Debtor proposes liquidate the Property by January 1, 2022 with the proceeds of the sale being used to pay all creditors in full. Great Central Mortgage Acceptance Company will be allowed to post the Property for foreclosure on December 1, 2021 and foreclose on the property on January 4, 2022 unless Debtor has a signed contract for the sale of the property.

If the Debtor has a signed contract for the sale of the property prior to January 4, 2022, Debtor will be granted an additional sixty days in order to close on the sale of the Property. Should the Debtor not be able to close within sixty days, Great Central Mortgage Acceptance Company will be entitled to foreclose on April 5, 2022.

The holder of the Class 1 claim is impaired and is eligible to vote on the Plan.

## ARTICLE 6.
### PROVISIONS FOR TREATMENT OF THE SECURED CLAIM HELD BY MEGAN COLLECTION SERVICES, INC., AGAINST THE DEBTOR (CLASS 2)

6.1. Class 2 is comprised of the Secured Claim of the Megan Collection Services, Inc., in the amount of $62,022.00 secured by a second lien on the real property located at 2150 State Highway 361, Aransas Pass, Texas 78336. Debtor would propose to pay this claim in full as follows:

Debtor proposes liquidate the Property by January 1, 2022 with the proceeds of the sale being used to pay all creditors in full. Great Central Mortgage Acceptance Company will be allowed to post the Property for foreclosure on December 1, 2021 and foreclose on the property on January 4, 2022 unless Debtor has a signed contract for the sale of the property.

If the Debtor has a signed contract for the sale of the property prior to January 4, 2022, Debtor will be granted an additional sixty days in order to close on the sale of the Property. Should the Debtor not be able to close within sixty days, Great Central Mortgage Acceptance Company will be entitled to foreclose on April 5, 2022.

The holder of the Class 2 claim is impaired and is eligible to vote on the Plan.

## ARTICLE 7.
### PROVISIONS FOR TREATMENT OF THE SECURED CLAIM HELD BY NUECES COUNTY AGAINST DEBTOR (CLASS 3)

7.1. Class 3 is comprised of the secured claim in the amount of $1,614.80 for taxes for Nueces County. Debtor proposes to pay said claim as follows:

Notwithstanding anything to the contrary contained within the Plan or approved Disclosure Statement, the Secured Tax Claim owing to Nueces County shall be paid by the Debtor, pursuant to the provisions of 11 USC §1129 (a) (9) (C), in full at the closing of the sale on the property located at 2150 State Highway 361, Aransas Pass, Texas 78336. The Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full.

The 2021 ad valorem taxes owed to the Taxing Jurisdictions shall be paid in the ordinary course of business as they come due and Taxing Jurisdictions shall not be required to file a request for allowance and payment of its claim.

Taxing Jurisdictions shall retain all liens until such taxes are paid in full.

In the event that any part of the retained property is sold during the term of the Plan, the unpaid taxes secured by said property shall be paid in full upon the sale of the property. If any property which secures the ad valorem tax claims is foreclosed by any lienholder,

Taxing Jurisdictions shall be free to pursue its state law remedies for collection of all amounts due under the Texas Property Tax Code.

Default shall occur if one monthly installment due to Taxing Jurisdictions under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2019 taxes) are not paid timely pursuant to state law. In the event of default the Taxing Jurisdictions shall send written notice of default to Debtor's attorney and Debtor. If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing Jurisdictions may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. The Debtor has the opportunity to cure two (2) times over the life of the Plan. In the event of a third default, the Taxing Jurisdictions may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

Notwithstanding any injunctions in the Plan or the Disclosure Statement to the contrary, the Reorganized Debtor shall timely pay to the Taxing Jurisdictions all post- petition taxes on all property retained by Debtor and the Taxing Jurisdictions may pursue any and all collection remedies as allowed by law with respect to said post-petition taxes and shall not be required to seek any relief from this Bankruptcy Court in the event Debtor or the Reorganized Debtor shall fail to timely pay said taxes.

The holder of the Class 3 claim is impaired and is eligible to vote on the Plan.

## ARTICLE 8.
## PROVISIONS FOR TREATMENT OF THE SECURED CLAIM
## HELD BY ARANSAS COUNTY AGAINST DEBTOR (CLASS 4)

8.1.   Class 3 is comprised of the secured claim in the amount of $7,288.62 for taxes for Aransas County. Debtor proposes to pay said claim as follows:

Notwithstanding anything to the contrary contained within the Plan or approved Disclosure Statement, the Secured Tax Claim owing to Aransas County shall be paid by the Debtor, pursuant to the provisions of 11 USC §1129 (a) (9) (C), in full at the closing of the sale on the property located at 2150 State Highway 361, Aransas Pass, Texas 78336. The Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full.

The 2021ad valorem taxes owed to the Taxing Jurisdictions shall be paid in the ordinary course of business as they come due and Taxing Jurisdictions shall not be required to file a request for allowance and payment of its claim.

Taxing Jurisdictions shall retain all liens until such taxes are paid in full.

In the event that any part of the retained property is sold during the term of the Plan, the unpaid taxes secured by said property shall be paid in full upon the sale of the property. If

any property which secures the ad valorem tax claims is foreclosed by any lienholder, Taxing Jurisdictions shall be free to pursue its state law remedies for collection of all amounts due under the Texas Property Tax Code.

Default shall occur if one monthly installment due to Taxing Jurisdictions under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2019 taxes) are not paid timely pursuant to state law. In the event of default, the Taxing Jurisdictions shall send written notice of default to Debtor's attorney and Debtor. If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing Jurisdictions may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. The Debtor has the opportunity to cure two (2) times over the life of the Plan. In the event of a third default, the Taxing Jurisdictions may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

Notwithstanding any injunctions in the Plan or the Disclosure Statement to the contrary, the Reorganized Debtor shall timely pay to the Taxing Jurisdictions all post- petition taxes on all property retained by Debtor and the Taxing Jurisdictions may pursue any and all collection remedies as allowed by law with respect to said post-petition taxes and shall not be required to seek any relief from this Bankruptcy Court in the event Debtor or the Reorganized Debtor shall fail to timely pay said taxes.

The holder of the Class 4 claim is impaired and is eligible to vote on the Plan.

## ARTICLE 9.
## PROVISIONS FOR TREATMENT OF THE
## GENERAL UNSECURED CREDITORS AGAINST DEBTOR (CLASS 5)

9.1. Class 5 is comprised of general unsecured claims held by 3 creditors for business debt in the approximate amount of $81,000.00. Debtor proposes to pay said claims as follows:

Claims totaling approximately $81,000.00 will be paid in full from the proceeds of the sale of the property located at 2150 State Highway 361, Aransas Pass, Texas 78336. The Claims shall bear interest at the rate of 5.25% per annum from the date of filing of this case until said taxes are paid in full.

The holders of the Class 5 claims are impaired and are eligible to vote on the Plan.

## ARTICLE 10.
## CRAMDOWN OF PLAN

10.1. In the event that one or more classes of impaired claims does not approve the Plan by the requisite vote, the Debtor shall seek confirmation of the Plan pursuant to the provisions of Section 1129(b) of the Bankruptcy Code.

8

ARTICLE 11.
MEANS FOR EXECUTION OF THE PLAN

11.1. Beginning on the Effective Date, from the income of the Debtor, they will allocate sufficient funds to make her distributions required under the Plan.

ARTICLE 12.
PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

12.1. Debtor and any party in interest shall have the authority to object to and contest the allowance of any Claims filed with the Bankruptcy Court in respect of any Claims listed as disputed, contingent or unliquidated on the Debtor's Schedules, except claims otherwise treated by the Plan or previously allowed or disallowed by Final Order of the Bankruptcy Court.

12.2. If the Plan provides for any payment under the Plan, all allowed Claims will be paid pursuant to the applicable terms.

ARTICLE 13.
ACCEPTANCE OR REJECTION OF PLAN: EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

13.1. Impaired Classes to Vote. Each impaired class of Creditors with Claims against any of the Debtor's estate shall be entitled to vote separately to accept or reject the Plan.

13.2. Any member of a class that is proposed to receive nothing under the Plan is deemed to have rejected the Plan is not permitted to vote on the Plan.

13.3. Acceptance by Class of Creditors. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of such class that have accepted or rejected the Plan.

13.4. Cramdown. In the event that any impaired class of Creditors with Claims against any of the Debtor's estate fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor shall request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

ARTICLE 14.
IDENTIFICATION OF CLAIMS NOT IMPAIRED OR IMPAIRED BY THE PLAN

14.1. Unimpaired Classes. There are no unimpaired classes.

14.2. Impaired Classes to Vote on Plan. The Claims in Classes specified in Classes 1, 2, 3, 4, and 5 of the Plan are impaired and therefore entitled to accept or reject the Plan.

14.3. A class of claims is impaired when a plan does not leave unaltered the legal, equitable, and contractual rights to a claim. Shareholder interests are also impaired when their legal and equitable interests are not left unaltered.

14.4. Controversy Concerning Impairment. In the event of a controversy as to whether any Creditors or class of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE 15.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

15.1. Assumption of Executory Contracts Under the Primary Plan. In the event of the Confirmation of the Plan, any executory contracts or unexpired leases not rejected by the Debtor with the Bankruptcy Court prior to the Confirmation Date or which are not the subject of a motion to reject the same pending as of the Confirmation Date shall be deemed to have been assumed by the Debtor upon the Confirmation Date, in accordance with Section 365 of the Bankruptcy Code.

## ARTICLE 16.
## PROVISIONS COVERING DISTRIBUTIONS

16.1. Payments Made On The Effective Date. Payments to be made by the Debtor shall be made beginning on the Effective Date, or as may be ordered by the Bankruptcy Court.

16.2. Method of Payment. Payments to be made by the Debtor pursuant to the Plan shall be made from his income with a check drawn on a domestic bank or by wire transfer from a domestic bank.

16.3. Payment to be Made by the Debtor. Distributions to be made to Creditors under the Plan shall be made by Viva Texas Cruises, Inc.

## ARTICLE 17.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

17.1. Bar Date for Objections to Claims. Unless otherwise ordered by the Court, after notice and a hearing, objections to Claims shall be made and filed by the Debtor or any party in interest and shall be served upon each holder of each of the Claims to which objections are made (and upon the Debtor's attorney if the Debtor are not the objecting party) and filed with the Bankruptcy Court as soon as practicable, but in no event later than 90 days subsequent to the Effective Date.

17.2. Prosecution of Objections to Claims. The objecting party shall litigate to judgment, settle or withdraw objections to Disputed Claims.

ARTICLE 18. COMMITTEES

18.1.   Termination. On the Confirmation Date, all Committees then in existence, if any, shall terminate.

ARTICLE 19.
PROVISIONS FOR EXECUTION AND SUPERVISION OF THE PLAN

19.1.   Retention of Jurisdiction. The Bankruptcy Court shall retain and have exclusive jurisdiction over the chapter 11 case for the following purposes:

    a.   to determine any and all objections to the allowance of Claims;

    b.   to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor are parties or with respect to which any may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

    c.   to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Confirmation Date, except as provided in the Confirmation Order;

    d.   to consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

    e.   to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, to include disputes between classes of claimants under the Plan regarding allocations or payment of Distribution hereunder;

    f.   to consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor's estate;

    g.   to issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; and

    h.   to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order, including, but not limited to, extending deadlines and time limits provided in the Plan.

19.2.   Amendment of Plan. The Plan may be amended by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

## ARTICLE 20.
## PROVISIONS FOR MANAGEMENT

20.1. Debtor are individuals and as such have no management.

## ARTICLE 21.
## EVENTS OF DEFAULT

21.1. In the event that the Debtor default under the provisions of the Plan (as opposed to a default under documentation executed in implementing the terms of the Plan, which documents shall provide independent bases for relief), any creditor or party in interest desiring to assert such a default shall provide the Debtor with written notice of the alleged default. The Debtor shall have 30 days from receipt of the written notice in which to cure the default. Such notice shall be delivered by certified mail, return receipt requested to the attorneys for the Debtor at the address stated on the final page hereof. If the default is not cured, any creditor or party in interest may thereafter file and serve upon attorney for the Debtor a motion to compel compliance with applicable provisions of the Plan. The Bankruptcy Court, upon finding a material default, shall issue such orders compelling compliance with the pertinent provisions of the Plan.

21.2. Alternatively, creditors may resort to applicable non bankruptcy law upon default and failure to cure by the Debtor.

## ARTICLE 22.
## MISCELLANEOUS PROVISIONS

22.1. Discharge of Debtor. The rights afforded in the Plan and the treatment of all Creditors therein shall be in exchange for and in complete satisfaction, discharge and release of Claims of any nature whatsoever, including any interest accrued thereon from and after the Petition Date against the Debtor and the Debtor-in-Possession or any of their assets or properties. Upon completion of payments to unsecured creditors under the Plan, in accordance with Section 1141 of the Bankruptcy Code, all such Claims against the Debtor and the Debtor-in- Possession shall be satisfied, discharged and released in full. All Creditors shall be precluded from asserting against the Debtor or their assets or properties any other or further Claims based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

22.2. Title to Assets; Discharge of Liabilities. Except as otherwise provided by the Plan, on the Confirmation Date, title to all assets and properties dealt with by the Plan shall vest in the Debtor, as the case may be, in accordance with Section 1141 of the Bankruptcy Code, free and clear of all Claims; and the order confirming the Plan shall be a judicial determination of discharge of the Debtor's liabilities as provided in Article 21.1.

22.3. Effect of Discharge on Rights Between Third Parties. If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan.

The distributions of consideration provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims, including any Claim for interest after the date of filing of the Chapter 11 petition. On the Confirmation Date, all Creditors shall be precluded from asserting any Claim against the Debtor or their assets or properties based upon any transaction or other activity of any kind that occurred prior to the Confirmation Date; provided, however, that nothing contained in the Plan will alter the legal, equitable and contractual right of the holder of any Claim specifically designated as being unimpaired in the Plan, it being specifically intended that all such rights are to remain unaltered by the Plan.

22.4. Section Headings. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

## ARTICLE 23
## PAYMENT OF UNITED STATES TRUSTEE QUARTERLY FEES
## AND SUBMISSION OF STATEMENTS OF DISBURSEMENTS

23.1. The Debtor shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee. The Reorganized Debtor also shall timely pay post-confirmation quarterly fees assesses pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing these chapter 11 cases, or enters an order either converting these cases to cases under chapter 7 or dismissing the cases. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements for each quarter, or portion thereof, that these chapter 11 cases remain open in a format prescribed by the United States Trustee.

Dated: August 1, 2021

/s/ *Vidal Conde*
Vidal Conde

Adelita Cavada Law
Attorney for Debtor & Debtor-in-Possession

/s/ Adelita Cavada
Adelita Cavada, TBN 24084882
5151 Flynn, Ste. 508
Corpus Christi, Texas 78411
210.880.5299 Telephone
833.851.3160 Facsimile
adelita@adelitacavadalaw.com

13